1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7                              AT SEATTLE

8  LAURA MARY NASTASE,                    )
                                          )
9                           Plaintiff,    )    Case No. C09-1138-RAJ-BAT
                                          )
10          v.                            )    **REPORT AND**
                                          )    **RECOMMENDATION**
11  BENJAMIN SANDERS, *et al.*,           )
                                          )
12                          Defendants.   )
   _____)

13        Plaintiff Laura Mary Nastase, proceeding *pro se* and *in forma pauperis*, is presently

14  incarcerated in the Maleng Regional Justice Center ("RJC") in Kent, Washington.  In this 42

15  U.S.C. § 1983 civil-rights action, Ms. Nastase contends that defendants violated the Eighth

16  Amendment's proscription on cruel and unusual punishment by showing deliberate indifference

17  to her serious medical needs in two ways: (1) defendants declined to prescribe her Vistaril; and

18  (2) defendants once dispensed Prazosin to her at an incorrect dosage.  (Dkt. 8, at 3; *see* Dkt. 1-2,

19  at 3–6 (Letter from Sanders to Nastase of 7/18/09).)  The Court recommends GRANTING

20  defendants' motion for summary judgment (Dkt. 31) and DENYING Ms. Nastase's motion to

21  continue ruling on defendants' motion for summary judgment (Dkt. 38), cross-motion for

22  summary judgment (Dkt. 35 (entitled "Motion to State a Claim")), motion to modify the

23  scheduling order (Dkt. 39 (entitled "Requesting Continuance")), and motion to appoint counsel

1  (Dkt. 40).

2                                    **BACKGROUND**

3       Ms. Nastase is serving a sentence for theft at the RJC.  (Dkt. 33 (hereinafter "Krzyzek

4  Decl."), at 2.)  She suffers from chronic mood disorders (including bipolar, anxiety, and post-

5  traumatic stress disorder, and poly-substance abuse/dependence of cocaine, marijuana,

6  benzodiazepine (a group of tranquilizers), and alcohol.  (*Id.*)  Defendants are associated with Ms.

7  Nastase's medical or psychiatric treatment: Dr. Benjamin Sanders, Medical Director for the King

8  County Correctional Facilities (Dkt. 32 (hereinafter "Sanders Decl."); Dr. Brian Waiblinger, a

9  psychiatrist (Dkt. 8, at 3); Barbara Krzyzek, Advanced Registered Nurse Practitioner (ARNP)

10 and Psychiatric Provider in the RJC (Krzyzek Decl., at 1–2); and Dean Webb, Chief of Pharmacy

11 at the King County Department of Public Health (Dkt. 8, at 3; Dkt. 21, at 1).

12      Pursuant to 42 U.S.C. § 1983, Ms. Nastase must show (1) that she suffered a violation of

13 rights protected by the Constitution or created by federal statute, and (2) that the violation was

14 proximately caused by a person acting under color of state or federal law.  *West v. Atkins,* 487

15 U.S. 42, 48 (1988); *Crumpton v. Gates,* 947 F.2d 1418, 1420 (9th Cir.1991).  Ms. Nastase

16 contends that defendants violated the Eighth Amendment's proscription on cruel and unusual

17 punishment by showing deliberate indifference to her serious medical needs in two ways.  First,

18 Ms. Nastase contends that defendants needlessly refuse to prescribe Vistaril to her.  (Dkt. 8, at

19 3.)  Second, she contends that the pharmacy once dispensed 10mg of Prazosin to her when her

20 prescription called only for 4mg.  Ms. Nastase claims that the high dosage "made me almost faint

21 in front of Officer Young.  Young watched me all morning while I slept."  (*Id.*)  Ms. Nastase

22 argues that defendants actions constitute cruel and unusual punishment.  (*Id.*)  Defendants

23 respond that there are sound medical reasons for not prescribing Vistaril to Ms. Nastase, and that

the dispensing mistake was corrected as soon as it was discovered and had little adverse effect given that Ms. Nastase noticed the mistake and took a single 5mg tablet of Prazosin instead of two 2mg tablets. (Dkt. 31, at 3–5.)

Defendants move for summary judgment. (Dkt. 31.) Ms. Nastase has responded with several motions: a motion to continue ruling on defendants' summary-judgment motion (Dkt. 38); a cross-motion for summary judgment (Dkt. 35); a motion to modify the scheduling order (Dkt. 39); and a motion to appoint counsel (Dkt. 40).[1]

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court draws all reasonable inferences in favor of the non-moving party. *United States v. Johnson Controls, Inc.*, 457 F.3d 1009, 1013 (9th Cir. 2006). The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy his burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).

Once this has occurred, the procedural burden shifts to the party opposing summary judgment. That party must go beyond the pleadings and affirmatively establish a genuine issue on the merits of her case. Fed. R. Civ. P. 56(e). The nonmoving party must do more than simply deny the veracity of everything offered or show a mere "metaphysical doubt as to the material

---

[1] The Court denied Ms. Nastase's previous motions to appoint counsel. (Dkts. 9, 20.)

1  facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

2  **II.    Ms. Nastase's Eighth Amendment Claims**

3       With a claim of alleged medical mistreatment in violation of the Eighth Amendment, an

4  inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to

5  serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  A prison official may be

6  held liable "only if he knows that inmates face a substantial risk of serious harm and disregards

7  that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan,* 511 U.S. 825,

8  847 (1994).  An inmate alleging an Eighth Amendment violation must satisfy a two-part test and

9  prove that: (1) the deprivation was, objectively, "sufficiently serious"; and (2) the prison officials

10  acted with a "'sufficiently culpable state of mind.'"  *Id.* at 834 (cited sources omitted).  The latter

11  subjective showing requires plaintiff to prove that (a) an official was aware of facts from which

12  he could have inferred that a substantial risk of serious harm existed, and (b) that the official in

13  fact drew the inference.  *See Farmer,* 511 U.S. at 837.  Deliberate indifference may be found

14  where prison officials "deny, delay or intentionally interfere with medical treatment, or it may be

15  shown by the way in which prison physicians provide medical care." *Hutchinson v. United*

16  *States,* 838 F.2d 390, 394 (9th Cir. 1988).  The indifference, however, must be substantial;

17  inadequate treatment due to negligence, inadvertence or differences in judgment between an

18  inmate and medical personnel do not rise to the level of a constitutional violation.  *See id.;*

19  *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir. 1989).  Prison officials may be free from liability if

20  they "responded reasonably" to a known risk; a dispute, in hindsight, over the existence of

21  arguably superior alternatives does not raise a triable issue of fact as to whether the defendants

22  were deliberately indifferent. *See Farmer,* 511 U.S. at 844; *Berg v. Kincheloe,* 794 F.2d 457, 462

23  (9th Cir. 1986).

REPORT AND RECOMMENDATION- 4

Defendants are entitled to summary judgment because the undisputed evidence shows that defendants neither objectively nor subjectively exhibited deliberate indifference to Ms. Nastase's serious medical needs. Rather the undisputed evidence shows that defendants have been assiduous rather than indifferent in treating Ms. Nastase's medical needs.

### A.    Prescribing Vistaril

Defendants' choice not to prescribe Vistaril was neither objectively "sufficiently serious," nor was the decision made with a "sufficiently culpable state of mind." First, objectively, the undisputed evidence shows that the purported deprivation was not sufficiently serious because prescribing Vistaril to Ms. Nastase was not clinically indicated and doing so would have been unwise. (Krzyzek Decl., at 4; Sanders Decl., at 2–3; Sanders Decl., Att. A ("Prescribing Guidelines for Psychiatric Medications Used by the Jail Health Services")). Vistaril is an anti-histamine that is commonly prescribed for itching and rashes, and sometimes is used as a short-term treatment for anxiety and sleep disorders. (Krzyzek Decl., at 4.) Defendants have stated a number of valid reasons for not prescribing Vistaril to Ms. Nastase: (1) Ms. Nastase's symptoms are chronic and long-term, and Vistaril is considered inappropriate for long-term treatment (*id.*); (2) Vistaril can be sedating, and sedated inmates can suffer physical injury by tripping and falling, are more vulnerable to assaults and abuse by other inmates, and are less able to handle legal matters and hearings (*id.*); (3) Ms. Nastase could suffer an adverse reaction, including an overdose and death, if she took Vistaril in combination with a non-prescribed drug (*id.* at 5; Sanders Decl., at 3), and Ms. Nastase has a history of poly-substance abuse and has tested positive for non-prescribed tranquilizers and marijuana even while incarcerated (Krzyzek Decl., at 5; Sanders Decl., at 3); (4) the RJC's prescribing guidelines limit the use of Vistaril to patients suffering from acute agitation, mania, or psychotic

processes and Ms. Nastase has not shown such symptoms (Sanders Decl., at 2–3; Sanders Decl., Att. A, at 8); (5) there are numerous other medications available to treat Ms. Nastase's symptoms (Krzyzek Decl., at 5; Sanders Decl., at 3); and (6) there is a black market on Vistaril in the RJC and officials suspect that Ms. Nastase tested positive for non-prescribed tranquilizers because she either purchased them in prison or acquired them from another inmate (*id.*; Krzyzek Decl., at 5). In contrast, Ms. Nastase has failed to state why taking Vistaril was so essential to her physical and mental well-being that the deprivation of it amounted to defendants' attempt to wantonly inflict pain.

Second, the undisputed evidence shows that defendants did not subjectively believe they were exposing Ms. Nastase to a substantial risk of serious harm by choosing not to prescribe her Vistaril. According to her Psychiatric Provider Barbara Krzyzek, the RJC's psychiatric and medical staff has provided Ms. Nastase with more treatment than any other current RJC inmate. (Krzyzek Decl., at 3.) Between her booking in April through October 2009, an RJC psychiatric or medical staff member saw Ms. Nastase on almost a daily basis. (*Id.*) Ms. Nastase frequently visited the RJC clinics for lab work, treatments, and follow-up, while nursing staff provided her with daily medication. (*Id.*) RJC inmates request psychiatric and medical assistance by filing "kites." (*Id.*) Between April and October 2009, the RJC psychiatric and medical staff responded to 75 kites from Ms. Nastase. (*Id.*) In response to Ms. Nastase's frequent requests for psychiatric and medical services, the Jail Health Services staff met in September 2009 and devised a Special Needs Treatment Plan for Ms. Nastase, the first and only time that the RJC has specially managed an inmate's treatment in this formal manner. (*Id.*) Under that plan, a nurse was to visit Ms. Nastase weekly to address her concerns. (*Id.*) However, in October 2009, Ms. Nastase informed RJC staff members that she no longer wanted to be visited weekly by a nurse

and no longer required special attention and service.  (*Id.* at 4.)

The crux of Ms. Nastase's claim is that defendants should have prescribed Vistaril for her condition, and that their decision not to do so was tantamount to deliberate indifference to her serious medical needs.  (Dkt. 8, at 3.)  However, unless a prisoner can "show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health," a difference of opinion between a physician and a prisoner over the appropriate course of treatment does not amount to deliberate indifference to serious medical needs.  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Ms. Nastase has failed to show that that there is a genuine issue of material fact regarding whether her difference of opinion with the RJC's medical and psychiatric staff over prescribing Vistaril amounted to deliberate indifference to serious medical needs.  Defendants are entitled to summary judgment on this issue as a matter of law.

**B.    Dispensing Prazosin**

Ms. Nastase's complaint about the jail pharmacy's refill error also fails to satisfy either the objective or the subjective prong of an Eighth Amendment violation.  Psychiatric Provider Barbara Krzyzek prescribed 4mg doses of Prazosin (two 2mg capsules) for Ms. Nastase to take at bedtime to help control nightmares.  (Krzyzek Decl., at 6; Dkt. 34 (hereinafter "Sandhu Decl."), at 2.)  In early July 2009, the pharmacy made an unintentional dispensing error by providing Ms. Nastase with a refill of 5mg capsules of Prazosin.  (Sandhu Decl., at 2.)  Ms. Nastase reported that she "almost fainted" due to the prescription mistake.  (Dkt. 8, at 3.)  In her chart, she reported that she "barely made it to [her] bed," that she "was all white," and actually fainted.  (Sandhu Decl., Att., at 4–5 ("Psych Provider Clinic Follow-Up Note").)  She apparently

noticed the difference in the tablet size, and took only one 5mg tablet in the morning rather than

at nighttime because she was sleeping during the days instead of the nights. (*Id.*) She took the

single 5mg tablet once a day for approximately a week. (*Id.* at 5.) The pharmacy corrected its

error and provided Ms. Nastase with the correct dosage. (Sandhu Decl., at 2.)

First, it would strain credibility to conclude, objectively, that Ms. Nastase was subjected

to cruel and unusual punishment by being exposed for one week to a single milligram more of

Prazosin daily given that, at most, Ms. Nastase passed out in her bed and slept all morning, and

that Psychiatric Provider Barbara Krzyzek typically prescribed 6–8mg doses of Prazosin to other

patients. (Krzyzek Decl., at 6.) Second, subjectively, defendants corrected the inadvertent error

as soon as they became acquainted with it. "[A]n inadvertent failure to provide adequate medical

care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105–06.

Ms. Nastase has failed to show that there is a genuine issue of fact regarding defendants'

indifference to her serious medical needs based on the dispensary error involving Prazosin.

Defendants are entitled to summary judgment on this issue as a matter of law.

**III. Ms. Nastase's Additional Motions**

**A. Motion to Continue Ruling on Defendants' Summary Judgment Motion**

In response to defendants' motion for summary judgment, Ms. Nastase moves to continue

ruling on defendants' summary-judgment motion. She asserts that she has an "intention to

dispute many of the statements" made by defendants, and that she is presently photocopying a

number of important exhibits, but she never specifies what statements she disputes or indicates

the relevance of the photocopied exhibits. (Dkt. 38, at 1.) Her motion lacks merit.

If a party opposing a summary-judgment motion shows by affidavit that, for specified

reasons, she cannot present facts essential to justify its opposition, the Court may deny the summary-judgment motion, order a continuance to enable the relevant information to be obtained, or issue any other just order. Fed. R. Civ. P. 56(f). A party opposing summary judgment is required to identify specific facts that further discovery would reveal, and to explain why those facts would preclude summary judgment. *See Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006); *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir. 1986). Even if the non-moving party has had little opportunity to request discovery, a Court need not delay ruling on a summary-judgment motion if discovery would be futile. *See Burlington No. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

Ms. Nastase has failed to identify specific facts that further discovery would reveal, and has failed to explain why those facts would preclude summary judgment. Ms. Nastase has failed even to specify which of defendants' statements she disputes. Given the evidence that has been presented by defendants, none of which has been contradicted, the Court cannot discern how Ms. Nastase could show cruel and unusual punishment deriving from (a) a medical decision not to prescribe a particular drug, or (b) an inadvertent dispensing mistake, quickly corrected, that resulted, at most, in Ms. Nastase sleeping throughout the morning.

The Court recommends denying Ms. Nastase's motion to continue ruling on defendants' summary-judgment motion (Dkt. 38).

### B. Ms. Nastase's Cross-Motion for Summary Judgment

In a "Motion to State a Claim" (Dkt. 35), which the Court interprets to be a cross-motion for summary judgment, Ms. Nastase asks for a ruling in her favor regarding defendants' decision not to prescribe her Vistaril. She appends 29 pages of exhibits (Dkt. 35-2), which include her

medical kites and responses with respect to her desire to obtain Vistaril. She does not, however, show that defendants' decision regarding Vistaril amounts to anything other than a difference opinion with her own. The Court recommends denying Ms. Nastase's cross-motion for summary judgment (Dkt. 35).

### C.      Motion to Modify the Scheduling Order

Ms. Nastase moves for a month-long continuance of the discovery deadline (Dkt. 39), which the Court interprets to be a motion to modify the scheduling order. *See* Fed. R. Civ. P. 16(c). "A schedule may be modified only for good cause and with the judge's consent." *Id.*

Ms. Nastase states that she seeks to modify the schedule due to "plaintiff[']s state of mind and ability to continue in an appropriate manner." (Dkt. 39, at 1–2.) The Court notes that Ms. Nastase's impairments are of a chronic nature and that she has failed to detail how a modification of the scheduling order would alter the Court's ruling on defendants' summary-judgment motion. (Dkt. 39-2 (Ms. Nastase's 23-page exhibit, including a Social Security Administration decision finding Ms. Nastase to be disabled since Apr. 1, 1999).) The Court therefore recommends DENYING as moot Ms. Nastase's motion to modify the scheduling order (Dkt. 39).

### D.      Motion to Appoint Counsel

Ms. Nastase moves for appointment of counsel (Dkt. 40). The Court recommends DENYING her motion to appoint counsel for the reasons specified in the Order dated September 1, 2009 (Dkt. 9).

### CONCLUSION

Undisputed evidence shows that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. The Court therefore recommends GRANTING defendants' motion for summary judgment (Dkt. 31) and DENYING Ms. Nastase's

motion to continue ruling on defendants' motion for summary judgment (Dkt. 38), cross-motion

for summary judgment (Dkt. 35), motion to modify the scheduling order (Dkt. 39), and motion to

appoint counsel (Dkt. 40).  A proposed Order is attached.

DATED this 3rd day of February, 2010.

BRIAN A. TSUCHIDA
United States Magistrate Judge